## Case No. 15,173.

### UNITED STATES v. FRYE.

[4 Cranch, C. C. 539.] [1]

Circuit Court, District of Columbia. May Term, 1835.

MANSLAUGHTER — INDICTMENT — TESTIMONY — PUNISHMENT OF SLAVE.

1. An indictment for manslaughter need not contain the words "in the fury of his mind."

2. The jumping on board of a boat, then in custody of the prisoner, after being warned not to do so, and with intent to do the prisoner some great bodily harm, and actually assaulting him with such intent, and putting the prisoner in fear of such great bodily harm, will excuse the homicide; but the jumping on board the boat, under the circumstances stated, was not an actual assault on the prisoner, who was fifteen feet from the deceased at the time of the shooting.

3. A slave convicted of manslaughter is, by the law of Virginia and of the District of Columbia, to be burnt in the left hand and publicly whipped.

This was an indictment against [Henry Frye] a slave for the manslaughter of Robert Jackson. Verdict, guilty. Motion in arrest of judgment, and for a new trial.

Mr. Brent, for the prisoner, contended that the indictment was defective in not averring that the act was done by the prisoner "in the fury of his mind."

It was an indictment for murder, changed to one for manslaughter, by striking out the allegation of malice prepense, and the word "murdered."

[1] [Reported by Hon. William Cranch, Chief Judge.]

THE COURT (nem. con.) overruled the motion in arrest of judgment, but granted a new trial, (THRUSTON, Circuit Judge, contra,) upon the doubt whether the circumstances did not excuse the homicide.

Upon the new trial, the circumstances, as they appeared in evidence were these: Jackson, the deceased, and one Nightengale, had beaten the prisoner severely on shore, who escaped from them, and fled to his master's boat, which was then in his custody, and under his command, by the authority of his master. They followed him down to the wharf, and Jackson dared him to come on shore, that he might lay his hands on him again. The prisoner refused, and told Jackson to stand off, and not to come on board; and if he did, he would shoot him. The warning and threat by the prisoner were repeated. Jackson said, "shoot and be damned." and jumped on board. The prisoner, who was standing with a gun in his hand at his cabin door, about fifteen feet from Jackson when he jumped on board, instantly shot and killed Jackson.

THE COURT, at the prayer of the prisoner's counsel, instructed the jury (THRUSTON, Circuit Judge, contra) that if they should be satisfied, by the evidence, that the prisoner was and is a slave, and at the time when, &c., had the custody and command of the boat in which, &c., by the authority of his master; and that the deceased, Jackson, entered upon the boat after being warned by the prisoner not to do so, and with intent to do a great bodily harm to the prisoner: and, after being in the boat, actually assaulted the prisoner with intent to do him such great bodily harm; and that the prisoner had good ground to apprehend, and did fear, that the said Jackson would do him such harm, and that the prisoner then killed the said Jackson by shooting him, &c., such killing amounted only to excusable homicide. And also, at the prayer of the counsel for the United States, instructed the jury (MORSELL, Circuit Judge, doubting) that the jumping on board the boat, under those circumstances, was not an actual assault by the deceased, Jackson, on board of the boat.

MORSELL, Circuit Judge, thought that the assault and beating on shore, and the following of the prisoner to the boat, and the threats used by Jackson on the wharf, at the time he jumped on board, evincing the continued purpose of again beating the prisoner, were sufficient evidence of an assault on board of the boat.

The jury could not agree, and by consent were discharged, and the cause continued to the next term, when the prisoner was again tried and convicted. It being stated and admitted that the prisoner is a slave, the sentence was, "that he be burnt in the left hand, and publicly whipped with twenty-five stripes."

See Act Cong. March 3, 1801, supplementary to the act concerning the District of Columbia,

§ 3 (2 Stat. 115), and Act Va. Dec. 17, 1792, p. 190, c 103. § 24; and the case of U. S. v. Clark [Case No. 14,802], in this court, at November term, 1825.